So our first case this morning is the State of Georgia v. Mark Randall Meadows. Mr. Terwilliger. Thank you, Chief Judge Breyer. Good morning, judges. Good morning. May it please the Court, I'm George Terwilliger, counsel for Mr. Meadows. We are here in this federal officer removal case because the state urged and the district court adopted in a rather unprecedented, unorthodox, and unworkable means to answer the question that arises in all such removal cases of what is the state prosecution for? The district court order at 740 in the appendix states, quote, the court determines that the act alleged against Mr. Meadows is the RICO charge, not the overt acts that, end quote, that is the overt acts in the indictment. In virtually every criminal removal case in the Supreme Court and this court, the answer is referenced to the official's factual conduct, not the state's charge. In this case, the proper answer here is an inchoate crime, right? Because it's a conspiracy charge. Correct. So it's really the act of green to participate in that conspiracy. Right. Doesn't that make it a little different from a lot of the ones that we and the Supreme Court have decided? It makes it different in kind, Your Honor, but not in result, because the only way you can't measure conduct against the nexus to office by some inchoate allegation. There has to be some factual basis of which to to attempt to make that nexus or to analyze that nexus. And here that nexus is both the overt acts listed in the indictment and Mr. Meadows testimony. Because he could be, could he not, at least in theory, convicted of that inchoate crime, even if the state failed to persuade the jury about one or more overt acts? Yes. But that's not the test of removal, of course, of whether he could be convicted. The test of removal is, as Your Honor, as the court knows, is whether there's a nexus to his office, whether he presents a colorable federal defense. His testimony at an extraordinary evidentiary hearing addresses the nexus and his credit, his theory of the case by virtue of the jurors prudence is to be credited. So what the prosecution here is for by the record in this case and by the overt acts that are listed in the indictment are acts taken in the West Wing of the White House by the highest appointed White House official. And these were established one by one through his testimony to be part of or connected to or related, as the statute now reads, to his duties. Well, the testimony that was provided essentially didn't provide any outer limits to what his duties were. So it's almost as if he could do anything in that capacity as long as he could say it was on behalf of the president. My question is, how do you reconcile, perhaps solely for purposes of removal, the acknowledgement of that behavior with the clear prohibitions of the Hatch Act? Well, I think Your Honor is actually asking me perhaps two questions. I'll answer the second one first in terms of the Hatch Act. First of all, it's not at all clear as a matter of law that the Hatch Act even applies to a senior cabinet official such as Mr. Meadows. But he did in his testimony acknowledge distinctions between those political activities in the political office of the president of the United States, that he could be involved in, as well as those things which involved what, for lack of a better summary term, I'll call descriptive. But I would submit to you, Your Honor, to go back to what I think is at least an implied question in the first part of what you asked me. For purposes of removal, he doesn't have to establish the outer limits of his office. He merely has to establish the nexus to his duties. But the problem here is that he wasn't able to, according to him, it seems like everything was within his official duties. And that just cannot be right. I mean, what is your answer to that? Well, I'm not sure what you mean, Your Honor, exactly by everything. If you mean everything in terms of what was described in the overt acts. I mean everything as far as what was described in the indictment, which would be what I would refer to as electioneering on behalf of a specific political candidate and an alleged effort to unlawfully change the outcome of the election in favor of a particular candidate when the office of the president has no preference for who occupies it. Yes, as the D.C. Circuit just noted. Although, of course, it's different for the president in terms of what's official and unofficial and what is official and unofficial for the chief of staff. And I'd be glad to explain that, but I won't belabor it. But, Your Honor, if I may, I think your question goes back to the question that Chief Judge Pryor asked at the outset. And in the context of a removal case, he doesn't have to answer for the state's charge in terms of saying that the conspiracy to do whatever it is the state alleged here, I'll call it the conspiracy for shorthand, has a nexus to his office. If that were the rule, there'd never be a removal case because every time the state leveled the charge... I'm sorry. Go ahead, Your Honor. I apologize to interrupt, but then how do you reconcile that with the third element for removal that requires the presentation of a colorable defense? Well, the colorable defense has to be to the charge, but based on his conduct. I'll give you an example of what I think is an older but an insightful case, Symes v. Colorado, which is in our brief. In that case, very briefly, a revenue agent enforcing the prohibition laws goes into an establishment that he expects to, or suspect, rather, of liquor law violations. While he's in there investigating, an individual comes in, sits down at the bar, and pours himself a drink. The officer goes to arrest him. There's a struggle as the subject resists arrest. The officer hits the subject in the head with his firearm, and very unfortunately, of course, the subject dies from that injury a few days later. When that case got to the Supreme Court, which it did very quickly, the court said the measure of the conduct that has to have a nexus to his office, and to which he must have a colorable defense, is not the murder charge or the homicide, whatever degree it was, but rather the act of striking with the gun. If we think about it, the only logical way that you can measure a colorable federal defense is not just by reference to the charge, but the conduct that gives rise to both the charge and to the colorable federal defense. Mr. Meadows' colorable federal defense here, at least at the most basic level, is a federal immunity defense. At the time I have left, I'm... I say before you run out of time, I wanted to give you an opportunity to address the former federal officer issue. Thank you, Your Honor. That's where I was going. I have really two points I'll make on that very quickly. First, going to the text itself and the difference between 1442A and B, those two statutes sort of came together by a circuitous route. And I actually looked really closely at the text of both. And when you sit down and look at the text of both, it seems very evident that 1442A is tied to the conduct of the official, regardless that the conduct must occur when he's in an official status. On the other hand, 1442B is tied to status when the... And invoking the removal statute, you have to establish both that he either is or was an officer and the conduct is tied. But it's not just conduct focused. It's two things. I agree with that, Your Honor. But the difference with 1442B, I believe, is that the way that statute is constructed, they had to include the phrase that references or was a former officer in order for the whole thing to make sense. But before I lose my time, I'd like to just make a second point on that, Judge Rosenbaum, to your question, which I think is really important. In the Pate decision, Judge Rosenbaum's concurrence, I believe I'm right about this, references another 11th Circuit decision called U.S. v. Bryant, written by Judge Brasher. And on the page that Your Honor references in the Pate case, he says that purpose cannot be used to contradict the text, but if a statute's purpose is derived from the text, the constitutive meaning can be helpful in understanding by looking to purpose. And he says, if I may quote, if the text could be read more than one way when considered in a vacuum, a statute's purpose may reveal which reading is correct. And a textually permissible interpretation that does not frustrate a statute's purpose is preferred over one that does. That seems to me... The problem I have with that is it's not evident to me how this text can be read two ways. I don't understand. I mean, if we read B, it's easy. It's plain that the distinction is drawn in recognition that they're former and current officers. I don't see where that appears at all in A1. It doesn't appear in the text. That's why I was... You're answering a question for me, so you're fine. Okay. You're not losing rebuttal time, but I'm having a hard time seeing how A1 has any reference to a former officer. B does. You're clearly right that there is a difference between the two, and I tried in my initial answer to explain why that is apparently there, because they were drafted for different purposes at different times. But I think, as importantly, the purpose of A1, really A1, 2, and 4, applying to former executive, judicial, and congressional officers, we have to look to the purpose of that statute. And frankly, Your Honor, if I could put it as plainly as I can, given that I'm over my time here, it just doesn't make any sense that Congress would intend, and the Supreme Court and this Court, in fact, have never indicated that it intends not to apply to formers, because then former officials wind up in state court. The vast majority of the cases that deal with this are dealing with current officers, and it might well be that Congress could rationally assume that there's a heightened reason for removal where you're dealing with a current officer because it involves ongoing operations of the federal government. But we ordinarily have a presumption that the separate sovereign of a state and its courts are equally faithful to the Constitution and the law and can be trusted, and that heightened concern might not exist where you have a former officer, because it does involve the ongoing operations of the government. Respectfully, Your Honor, I'd make two quick points about that. Number one, I think we cannot lose sight of the overall purpose of this statute, which, as indicated in every Supreme Court decision that talks about it, and that is that the purpose of this statute is to provide a federal forum for a federal defense for a federal charge. And if the statute were to be interpreted that former officials were not covered, as soon as judges leave the bench, officials leave an administration, a member leaves Congress, their federal defenses would be presented in state court, which would lead to chaos, with, note, the unification of the federal courts addressing federal questions and federal defenses lost. Secondly, on the interference point, Your Honor, and I'll be glad to discuss this in more detail in rebuttal, this is interference, because if Mr. Meadows has a colorable federal defense, that is part of the federal system by the cases to apply that. I don't see how this is in any way interfering with the Biden administration. It's not interfering with the Biden administration, but it is interfering with the administration of federal law in federal courts, and that's what the statute is designed to accomplish. Okay, Mr. Terwilliger, you save four minutes for rebuttal. Thank you. Let's hear from Mr. Wakeford. May it please the court, Donald Wakeford for the state of Georgia. This court should affirm the district court's order, because the Pate decision provided us with the interpretive tools to clarify that 1442A1 does not apply to former federal officials such as the appellant, because the appellant failed to provide a factual basis supporting a colorable, that is to say, plausible federal defense, and in any event, because the district court's application of 1442A1 to the facts and circumstances of this case demonstrate a common-sense approach to the charges for which appellant is actually being tried. But, counsel, isn't it true that the district court's analysis, number one, didn't even address whether or not former officials were covered under the statute, and even if it had, it would have done so without the benefit of the Pate decision? It's true. The Pate decision, of course, did come down after proceedings in this case had moved forward. However, that is a decision that would be reviewed de novo anyway, because it is a jurisdictional question, ultimately. There, of course, are mixed issues of law and fact in this case, and determinations of credibility would, of course, be afforded more deference by this court, whatever Judge Jones found with regard to credibility or certain facts and evidence. However, because this court is able to review that at this stage, that doesn't present us with a problem. What do we make of the fact that not a single court in the 140 years of this statute's ever held that former officers are categorically excluded? Certainly, this issue has not been brought up before. However, Pate actually speaks to that. The silence of circuit courts to certain issues should not be read as a ratification of a certain idea, and Congress's silence in response to a certain interpretation of the law is actually addressed explicitly by this court's decision in Pate, as it's not giving us an indication as to what a statute should actually mean. Pate actually goes back to the bedrock principle, which you really can't escape in these circumstances, which is that we begin with the words in the statute itself. That is what controls. We are in the business of deciding what words mean, and that is really what the Pate decision says. So it hasn't been addressed before. It was presented to the parties by this court for our consideration. We applied the canons of construction to come to an understanding of what the words in the statute mean. We provided a briefing on that question, and then the Pate decision was released, which reflected largely almost in sequence the arguments provided by the state of Georgia on this particular issue. And that is because when you begin with the words, you reach the inescapable conclusion that, although Congress had the opportunity over those 140 years to write a statute or amend a statute to reflect that it explicitly applies to former federal officials, it never took the opportunity to do so. And instead, the word officer appears, just as it does in Pate, with an indication of present status as an officer, not former. Let me turn your attention for a moment to the other argument involved here, the one that the district court resolved the case on. Your colleague on the other side has said that, you know, if we just look at the objective of the alleged conspiracy, then always the federal officer is going to lose. What is your response to that? There are actually conspiracies that could be charged. As a general matter, there are conspiracies that could be charged that would be capable of removal and actually require removal. The Baucom v. Martin case actually gives us a very illustrative example of such a conspiracy. That was a sting operation effected by state and federal authorities in order to uncover local government corruption. There was unquestionably a conspiracy. There was unquestionably a conspiracy to commit bribery. But it was part of a federal operation and taken under color of federal law to enforce the law. That would be an example where an appellant could come before this court and say, my association with this conspiracy was taken under color of law at every step. And, of course, then, of course, the case is removed. This is not that case. What we have instead is a case where the association with the conspiracy, the appellant failed in his duty to provide a basis for the district court to understand that there was a federal purpose to his association with the conspiracy alleged in the indictment. There was a failure by the appellant to provide a factual basis that demonstrated how not only he was enforcing federal law, but how he was even taking actions under color of the law. That's what counsel on the other side is saying is the challenge, because essentially you're requiring Mr. Meadows to present a defense when an immunity defense doesn't necessarily require the level of detail that you're suggesting. I understand. Yes. And the district court was actually very sensitive to the bind that the statute and the precedent sort of placed district courts in in this sort of scenario, leaving aside the question of a conspiracy charge, which, as the district court noted, is very self-litigated, if ever. In fact, that's part of the reason here. But the court is expected to hold an evidentiary hearing. It's required to. And it's a court taking evidence and witnesses. It has to assess credibility. It has to assess the evidence brought before it. And there is a burden on the appellant to provide a factual basis for both his connection to official acts and also how the facts he provides support his federal defense. But at the same time, the court is told you're not supposed to require an exacting defense on the merits. You're not supposed to pre-try your case. So the district court very carefully said, I am taking all of this into account. I am assessing the evidence that has come before me, and I am simply finding that the appellant has failed to address certain problems, which indicate that I don't have facts before me justifying jurisdiction in this case. So it's not that the appellant had to come before the district court and pre-try his case, but he had to provide a factual basis that addressed some of the issues which the district court highlighted in its order, which were not addressed and, to my mind, have still not been addressed, even this morning. Mr. Meadows was unable on the stand to provide a cogent explanation of what the scope of his office was. Without that, the court had to look to other indications. Well, the court would have done this anyway, but the court is looking to other aspects of the law to determine what are the hard limits of this Office of Chief of Staff. The Hatch Act, the Constitution, they provide us indications of where this authority must end, and Mr. Meadows consistently, in briefing and when he testified, provided no limits whatsoever and expected then for the court to simply rubber stamp his representations as to what his job actually was and how it was connected to this case. There is no role for any court in the analysis provided by the appellant. Instead, Mr. Meadows would be expected to come before the court at the hearing, and the hearing is simply a stage for which he can provide the court with his unquestioned explanation as to why he should receive removal of his case. That simply cannot be the test. There has to be some kind of assessment, and this sort of, not all the way, but sort of assessment is done in class action certifications and other areas under the law as well. The district court just made clear that there was some standard, even a liberal one, that the appellant was expected to meet, and he failed to meet it. If we go back a moment to the textual issue. Yes, Your Honor. How do we address the concern of a chilling effect? Your rating would imply, would it not, that federal officials in an administration that might be unpopular in certain jurisdictions could then be immediately subject to prosecution in those jurisdictions after they leave office. Doesn't that put us really in an untenable situation? Not an untenable one, Your Honor. It's certainly something that this court should be aware of. I believe it was actually recently addressed in the D.C. District Court by Judge Chutkan, sort of saying that there are certain activities which perhaps it would be best for the country and the office of the presidency if certain individuals were chilled from taking certain actions. And I believe that reasoning would apply with equal force here. Well, I mean, following up on that a little bit, you can imagine, I think you might be able to imagine, that if former federal officers can be charged and not removed, can be charged by states and not removed to federal court when they do have colorable federal defenses, that, let's say, you know, the entire administration of the president and his entire cabinet are indicted by maybe even multiple states the day that they leave office, you know, by jurisdictions where their policies over the preceding four or eight years were unpopular. And they're indicted for activities that clearly were within the scope of their official duties. I mean, doesn't that create a chilling effect in some way on people who might consider running for office or people who are in office and maybe they think twice about what they're going to do because they are concerned about being indicted later and not being able to have a trial in a federal forum? I understand what your Honor is saying, and I understand the concern, certainly. I think one indication, one way we should look at this is that it is possible under the interpretation of 1442 as applying only to current officers, but is it probable? Again, I would refer to the great weight of history to demonstrate that doesn't happen. It hasn't happened. These are exceptional circumstances. Well, I mean, it has happened in the past with respect to current officers, where current officers have been indicted. So this is going, again, sort of to something that was addressed in Pate, where we sort of look at what the purpose of the statute is. In the statute here, the purpose, as appellant has put forward, is to protect federal authority. We, of course, have maintained that there is no federal authority to protect here. So some of these concerns are more detached from the facts of this case. However, we start with the text and only get to the purpose after we assess what the law actually says. So once we look at what the words of the statute actually tell us, if we get to purpose, it's if there's still unresolved questions. Your point is the purpose has to be derived from the text, and we can't smuggle in the answer to purpose before we look at the text. That is the circumstance, yes. And I am sensitive to the fact that, of course, there is the question of chilling effect and possible abuses that could happen from the interpretation of the statute that follows from the text. However, if there is a need to amend it, that is something that consistently this court and others have said that is the job of another branch of government and not the courts. And the abuses are the variety that Judge Rosenbaum just gave an example of? I'm sorry, Second Judge? And the abuse that you just mentioned that it's susceptible to, would you agree the example that Judge Rosenbaum gave in terms of the chilling effect for people interested in running for office but being afraid that they might be indicted in state court for federal behavior is an abuse that is a legitimate concern? It is a concern. I would call it legitimate. I still don't know that we can stand here in the court today and say that there are people out there who will refuse to pursue civic duties because of the interpretation of 1442 here. Well, what about, let's say that you have someone steps down, a cabinet officer steps down in the middle of an administration and is immediately indicted in state court relating to her activities in creating and or enforcing a federal government policy that's deeply unpopular in the state locale. But everything that she did, everything that's charged, was done in the course of her executing her official duties. Doesn't that create some kind of a chilling effect for the continuation of the policy? I think what's creating the chilling effect is not the question of removal but actually the abuse of prosecutorial discretion that all of these hypotheticals describe. Well, but that's the problem, right? Because the abuse of prosecutorial discretion, if it's followed up by a state court process that wouldn't be ideal, let's say, because generally, as a general matter, I mean the state courts are perfectly capable of interpreting the law, applying the law fairly, understanding federal defenses, etc. But in that odd situation where perhaps that's not the case, the problem is that the case can't be removed to federal court and then that officer has to undergo the entire procedure in the state court and has no opportunity to get to federal court until, if she's lucky enough, the Supreme Court grants cert and considers it or maybe on a habeas after direct appeal. Certainly. I understand, Your Honor. And again, I think this is going to the question of the purpose of the statute, which I think is to protect federal authority. However, federal authority is protected when the current officers within the government are protected by the removal statute. So the statute is accomplishing its purpose. And to the extent that there is a question that later things might happen, there is still the protection, as you pointed out, state courts are still eminently capable of applying the law as it comes before them. What we must remember, and what Pate reminds us of, is that the plain text controls what we understand the statute to mean. And while this concern is real, and for obvious reasons you are bringing it up to me, that purpose, that understanding of what even the obvious purpose, I think is the phrase used in Pate, of the statute may seem to be, cannot override what the words of the statute actually say. Especially when the words of the statute here do accomplish the purpose that seems to be set out, which is to protect federal authority. I think ultimately this is a case where, once again, there is no federal authority to protect. Thank you, Mr. Wakeford. Thank you, Judge. I think we understand your case. Mr. Terwilliger. Thank you, Your Honor. The state's reference and reliance on Bauckham v. Martin is very misplaced, for the point that they made. I was going to try to underscore that case for the court's attention. That's the case where an FBI agent is part of an undercover operation, paid a bribe to a state court judge, and he was indicted for bribery. If you look at the decision in that case, it makes it very clear that what is the measure of his conduct vis-a-vis his federal duty, for both removal and immunity purposes, is the payment of the bribe, not the charge of the bribe. And that's our point here, that it has to be the conduct that matters. To the point that you raised, Judge Rosenbaum, about the chilling effect, I'd say two things. If anyone—I served as a cabinet-level officer, deputy attorney general, and an acting attorney general— my decision-making would have been really different if I knew the moment I stepped down, I could be charged in a state court. I'm sure the same is true for every judge. When Judge Martin left, she left with the protection of this. You could have been charged in a state court. But then I could remove it. So you're saying that your conduct would have been different if you had known that if you were charged in a state court, you couldn't have removed it to federal court? If I knew, I couldn't have removed it, yes. Because it has a chilling effect. It has to. I mean, it's common sense. Let's say that if the language of the statute, the text of the statute, the structure of the statute seems to be clear—this is the hypothetical— seems to be clear that it covers only current officers, isn't that something that Congress should address? Well, if there was a question about it, I think Congress would address it and address it very quickly since Congress is also covered by this statute. But for 130 years, there's been no question about it. And if you look at the effect of—let's suppose you so held that. What is the effect here? That means that Mr. Meadows— Would you agree, though, that no court other than the New York court, where neither party disputed it, had squarely addressed the question? Squarely addressed the question. I think that's right. I will note that the state here was asked by the judge, is he a federal official for purposes of this statute? And they conceded that he was. But the net effect, Your Honor, of anything but removal here is that the question of does Mr. Meadows have a Supremacy Clause defense, what is the extent of the duties of the Chief of Staff, the President of the United States, what political activity or none as the case may be engaged in, are all going to be sent to a state court to decide. That makes no sense under the Supremacy Clause whatsoever. Those are federal questions that need to be resolved in federal court. Thank you, Mr. Terwilliger. Thank you very much. We understand your case.